**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MATTHEW CHRISTIAN MILISITS,    )
                                          )     Case No. 2:20-cv-01452
                                          )
               *Petitioner*,       )
                                          )
         v.                     )     Magistrate Judge Kezia O. L. Taylor
                                          )
ROBERT MARSH, *Superintendent of*  )
*SCI Benner Township*, ATTORNEY    )
GENERAL OF THE STATE OF        )
PENNSYLVANIA and DISTRICT      )
ATTORNEY OF WESTMORELAND   )
COUNTY,                             )
                                          )
             *Respondents*.

## MEMORANDUM OPINION

Presently before the Court[1] is an Amended Petition for Writ of Habeas Corpus ("Amended Petition") filed by Matthew Christian Milisits ("Petitioner") pursuant to 28 U.S.C. § 2254.  ECF No. 10.  Petitioner challenges his judgment of sentence entered in the Court of Common Pleas of Westmoreland County at criminal docket number CP-65-CR-0004743-2012.  For the reasons set forth below, the Amended Petition will be denied and a certificate of appealability will also be denied.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

A. **Factual Background and Procedural History**

Petitioner was charged with multiple offenses as a result of an incident that occurred on November 15, 2012, wherein he caused the death of his two-month-old infant daughter who died due to a brain injury caused by the infliction of Abusive Head Trauma. Those charges included criminal homicide, aggravated assault, simple assault, endangering the welfare of a child, and recklessly endangering another person. ECF No. 24-3 at 5-6. On September 5, 2014, Petitioner entered an open guilty plea before Judge Rita Hathaway to one count of third-degree murder. ECF No. 24-8 at 1-20. The Commonwealth then amended the Criminal Information to reflect a charge of third-degree murder and dismissed the remaining counts. ECF No. 24-3 at 7-8,

A sentencing hearing was held before Judge Hathaway on December 8, 2014, ECF No. 24-9, after which she imposed a sentence of twenty (20) to forty (40) years of incarceration. ECF No. 24-8 at 21-22. Post-sentence motions were denied on January 20, 2015. ECF No. 24-10 at 26. The Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence on September 29, 2015, ECF No. 24-12 at 20-25, and the Supreme Court of Pennsylvania denied his petition for allowance of appeal on December 28, 2015, ECF No. 24-13 at 3.

Petitioner filed a *pro se* petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA") on December 21, 2016. ECF No. 24-13 at 5-41. One day later, Petitioner's court appointed attorney filed a PCRA petition on his behalf. ECF No. 24-14 at 1-14. A PCRA hearing was held before Judge Hathaway on July 31, 2017, and on the day of the hearing, Petitioner requested that the counseled petition be withdrawn and that he be appointed new counsel. ECF 24-14 at 16-24. The court granted this request, and new counsel was directed to file either an amended PCRA petition or a no-merit letter. ECF No. 24-14 at 36.

2

On November 24, 2017, Petitioner's second PCRA attorney filed a no-merit letter and a motion to withdraw pursuant to *Turner*/*Finley*.[2]  ECF No. 24-14 at 37-39.  Petitioner filed a response to counsel's no-merit letter and an amended *pro se* PCRA petition.  ECF No. 24-15.  He asked that the court find that his second PCRA counsel was ineffective, appoint him new counsel, release funds for investigators and expert witnesses and that Judge Hathaway recuse herself.  *Id.*  On January 17, 2018, the court issued a notice of intent to dismiss the petition.  ECF No. 24-16 at 2-17.  Petitioner filed a *pro se* response to the court's notice alleging, *inter alia*, that his counsel had been ineffective in litigating his PCRA claims.  ECF No. 24-16 at 20-39; ECF No. 24-17 at 2-34.  The court then granted counsel's motion to withdraw and appointed a third attorney to represent Petitioner in his PCRA proceedings.  ECF No. 24-17 at 35.

Petitioner's third attorney filed an amended PCRA petition that raised the same claims that Petitioner had raised in his initial *pro se* petition.  ECF No. 24-17 at 36-40.  The PCRA court found that no meritorious issues had been raised and issued an order dismissing the petition without a hearing.  ECF No. 24-17 at 41-44.  Petitioner filed a timely notice of appeal and his counsel also filed a notice of appeal on his behalf.  ECF No. 24-17 at 45.  Petitioner then wrote a letter to the court informing it that his third PCRA counsel had been ineffective and that he wished to have new counsel or represent himself *pro se* on appeal.  ECF No. 24-17 at 49-56.  The PCRA court allowed counsel to withdraw and determined that Petitioner had knowingly, intelligently and voluntarily waived his right to representation for his appeal.  ECF No. 24-18 at 8-34.  The dismissal of PCRA relief was affirmed on appeal by the Superior Court on January 2, 2020, ECF No. 24-25

---

[2] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. 1988) (en banc).

at 26-33, and reargument of that decision was denied on March 11, 2020, ECF No. 24-25 at 49. Allowance of appeal was subsequently denied by the Supreme Court on August 10, 2020.  ECF No. 24-26 at 35.

Petitioner initiated these federal habeas proceedings by lodging his habeas Petition with this Court on or about September 22, 2020.  ECF No. 1.  He filed his Amended Petition on or about November 9, 2020.  ECF No. 10.  The Amended Petition raises four grounds for relief.  Grounds one through three are premised on trial counsel's ineffectiveness, and the fourth ground for relief challenges the constitutional validity of Petitioner's guilty plea.  Respondents filed an Answer to the Amended Petition on May 19, 2021, ECF No. 24, and Petitioner filed a Reply thereto on October 19, 2021, ECF No. 32.  The Amended Petition is now ripe for review.

**B. <u>Federal Habeas Standard</u>**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), habeas relief is only available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

An application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  For purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground.  *See*, *e.g.*, *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011); *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

The majority of federal habeas claims need only be analyzed under § 2254(d)(1), which applies to questions of law and mixed questions of law and fact.  In applying § 2254(d)(1), the federal habeas court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1).  The phrase "clearly established," as the term is used in § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of the [United States Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 363, 412 (2000).  Thus, "clearly established Federal law" is restricted to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, the federal habeas court must determine whether the state court's adjudication of the claim at issue was "contrary to" that law.  *Williams*, 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have independent meaning).  A state-court adjudication is "contrary to" clearly established Federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court]

precedent." *Id.* at 405, 406. A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Id.* at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives under § 2254(d)(1)'s "unreasonable application" clause.

A state court decision is an "unreasonable application" of clearly established Federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. To satisfy his burden under this provision of AEDPA's standard of review, the petitioner must do more than convince the federal habeas court that the state court's decision was incorrect. He must show that it "was objectively unreasonable." *Id.* at 409. This means that the petitioner must prove that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

As the Supreme Court has noted:

> …. It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer*, *supra*, at 75, 123 S. Ct. 1166.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Richter*, 562 U.S. at 102.

If a petitioner is able to satisfy the requirements of § 2254(d)(1), then the state court decision is not entitled to deference under AEDPA and the federal habeas court proceeds to a *de novo* evaluation of the constitutional claim on the merits. *See Tucker v. Superintendent Graterford SCI*, 677 F. App'x 768, 776 (3d Cir. 2017) (citing *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ("When . . . the requirement set forth in § 2254(d)(1) is satisfied[,] [a] federal court must then resolve the claim without the deference AEDPA otherwise requires."). The Court of Appeals for the Third Circuit has explained that,

> [w]hile a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient. That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is "firmly convinced that a federal constitutional right has been violated," *Williams*, 529 U.S. at 389, 120 S.Ct. 1495. *See also Horn v. Banks*, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard"). Thus, when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred. *See Lafler v. Cooper*, 566 U.S. 156, 174, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

*Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-89 (3d Cir. 2017) (internal footnote omitted).

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013). "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support

the state court's factual findings." *Dennis v. Secretary, Pennsylvania Department of Corrections*, 834 F.3d 263, 281 (3d Cir. 2016) (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus.").  Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication.  *Woods*, 558 U.S. at 301 (quoting *Collins*, 546 U.S. at 341-42).

　　If the state court did not adjudicate a claim on the merits, the federal habeas court must determine whether that was because the petitioner procedurally defaulted it.  *See*, *e.g.*, *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002).  If the claim is not defaulted, or if the petitioner has established grounds to excuse his default, the standard of review at § 2254(d) does not apply and the habeas court reviews the claim *de novo*.  *See*, *e.g.*, *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  However, in all cases and regardless of whether the standard of review at § 2254(d) applies, the state court's factual determinations are presumed to be correct under § 2254(e)(1) unless the petitioner rebuts that presumption by clear and convincing evidence.  *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010); *Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007) ("the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d).") (citing *Appel*, 250 F.3d at 210).

### C. Discussion

#### 1. Ineffective Assistance of Counsel

Petitioner's first three grounds for relief are premised on the ineffective assistance of his trial counsel for (1) failing to argue that Pennsylvania's third-degree murder statute is unconstitutional and void for vagueness; (2) failing to file a motion to recuse Judge Hathaway; and (3) failing to examine favorable evidence, investigate defenses, and consult with his client.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence.[3] *Id*. at 685-87. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013).

Under *Strickland*, it is Petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" *Titlow*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690); *Richter*, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must

---

[3] Since the Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" *Evitts v. Lucey*, 469 U.S. 387, 392 (1985) (quoting *Griffin v. Illinois*, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, *id*. at 396, the ineffective assistance of counsel standard of *Strickland* applies to a claim that direct appeal counsel was ineffective. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689).  Counsel cannot be deemed ineffective for failing to raise a meritless claim.  *See*, *e.g.*, *Preston v. Sup't Graterford SCI*, 902 F.3d 365, 379 (3d Cir. 2018).

*Strickland* also requires that Petitioner demonstrate that he was prejudiced by counsel's alleged deficient performance.  This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

The Supreme Court in *Strickland* noted that although it had discussed the performance component of an ineffectiveness claim before the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order.  466 U.S. at 697.  If it is more efficient to dispose of an ineffectiveness claim because the petitioner failed to meet his burden of showing prejudice, a court need address only that prong of *Strickland*.  *Id*.

Pennsylvania courts typically articulate *Strickland*'s standard in three parts, while federal courts set it out in two.  The legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.  *See*, *e.g.*, *Commonwealth. v. Mitchell*, 105 A.3d 1257, 1266 (Pa. 2014) ("[T]his Court has divided [*Strickland*'s] performance component into sub-parts dealing with arguable merit and reasonable strategy.  Appellant must, therefore, show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and Appellant suffered prejudice as a result."); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-

18 (Pa. 2012) ("In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland*[.]").

a. **Claims 1 and 2**

Petitioner concedes that his first two claims of ineffective assistance of counsel are not exhausted because he failed to raise them in his collateral proceedings before the state courts.[4]  In this regard, the provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. This "exhaustion" requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal court[.]" *O'Sullivan v. Boerckel*, 562 U.S. 838, 845 (1999).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).  However, in such cases applicants are considered to have procedurally defaulted their claims.  *See Rolan v. Coleman*, 680 F.3d 311, 317

---

[4] Petitioner's first two claims are actually claims of ineffective assistance of PCRA counsel for failing to raise claims of ineffective assistance of trial counsel.  However, the ineffectiveness or incompetence of counsel during a state collateral post-conviction proceeding, such as Pennsylvania's PCRA proceedings, is not a ground for relief in a proceeding arising under section 2254.  *See* 28 U.S.C. § 2254(i).  Because Petitioner recognizes that his underlying ineffective assistance of trial counsel claims presented in claims one and two are procedurally defaulted, but he argues that the procedural default should be excused pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), the Court will treat the underlying charges of ineffective assistance of counsel presented in those claims as Petitioner's actual claims one and two.

(3d Cir. 2012).  The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism."  *Coleman*, 501 U.S. at 730.  For a Pennsylvania state prisoner in a non-capital case, procedural default occurs when the petitioner: (1) failed to present the federal claim to the Superior Court of Pennsylvania and a state procedural rule (such as the PCRA's one-year statute of limitations) would bar the state court from considering the claim now; or (2) the Superior Court of Pennsylvania declined to address the federal claim on the merits because of the petitioner's failure to comply with a state procedural rule when he presented the claim to the state court (often referred to as the "adequate and independent state ground doctrine"). *See*, *e.g.*, *Rolan*, 680 F.3d at 317.

Federal courts may not consider procedurally defaulted claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime, *McCleskey v. Zant*, 499 U.S. 467, 494 (1991), by presenting "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[,]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

It is more common that a petitioner will allege cause and prejudice to overcome a procedurally defaulted claim.  To show cause, a petitioner must demonstrate that "some objective factor external to the defense" prevented compliance with the state's procedural requirements. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  A factor is

external to the defense if it "cannot fairly be attributed to" the prisoner.  *Id.*  The Supreme Court

has explained:

> It has long been the rule that attorney error is an objective external factor
> providing cause for excusing a procedural default only if that error amounted to a
> deprivation of the constitutional right to counsel.  *See Edwards v. Carpenter*, 529
> U.S. 466, 451 (2000).  An error amounting to constitutionally ineffective assistance
> is "imputed to the State" and is therefore external to the prisoner.  *Murray*, *supra*,
> at 488.  Attorney error that does not violate the Constitution, however, is attributed
> to the prisoner under "well-settled principles of agency law."  *Coleman*, *supra*, at
> 754.  It follows, then, that in proceedings for which the Constitution does not
> guarantee the assistance of counsel at all, attorney error cannot provide cause to
> excuse a default.

*Davila v. Davis*, 582 U.S. 521, 528-29 (2017).

The general rule is that, because there is no federal constitutional right to counsel in a

PCRA proceeding, a petitioner cannot rely on PCRA counsel's ineffectiveness to establish the

"cause" necessary to overcome the default of a federal habeas claim.  *Id*. at 529 (citing *Coleman*,

501 U.S. at 755).  In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court announced a narrow

exception to this rule.  In relevant part, it held that in states like Pennsylvania, where the law

requires that claims of ineffective assistance of trial counsel be raised for the first time in a

collateral proceeding,[5] a petitioner may overcome the default of a claim of trial counsel's

ineffectiveness.  To do so, the petitioner must show: (1) the defaulted claim of trial counsel's

ineffectiveness is "substantial"[6] and (2) PCRA counsel was ineffective under *Strickland v.*

---

[5] In Pennsylvania, a defendant typically may not litigate ineffective assistance of trial counsel
claims on direct appeal.  Such claims must be raised in a PCRA proceeding.  *Commonwealth v.
Grant*, 813 A.2d 726 (Pa. 2002) (*abrogated in part on other grounds by Commonwealth v. Bradley*,
261 A.3d 381 (Pa. 2021)).

[6] For a defaulted claim of trial counsel ineffectiveness to be "substantial" it must have "some
merit," meaning that a petitioner must "show that reasonable jurists could debate whether . . . [the
claim is] adequate to deserve further encouragement to proceed further."  *Martinez*, 566 U.S. at 14

13

*Washington*, 466 U.S. 668 (1984) for (3) failing to raise that claim in the "initial review collateral proceeding" (meaning to the PCRA court).  *Martinez*, 566 U.S. at 17.  The holding in *Martinez* is limited to defaulted claims asserting trial counsel was ineffective.  *See*, *e.g.*, *Davila*, 582 U.S. at 529-31.  It does not apply to any other type of defaulted claim.  *Id.*

Petitioner asserts that this Court should excuse the default of his first two claims of ineffective assistance of counsel pursuant to *Martinez*.  However, the Court finds that Petitioner cannot overcome the default of either claim because there is no merit to the objections that he believes counsel should have made.  Specifically, in claim one, Petitioner states that his counsel failed to argue that Pennsylvania's third-degree murder statute is unconstitutional and void for vagueness because it fails to contain, define or give notice of "malice."[7]  However, in

---

(citing *Miller-El*, 537 U.S. 322, 336 (2003)).  This is a threshold inquiry that "does not require full consideration of the factual or legal bases adduced in support of the claims."  *Miller-El*, 537 U.S. at 336.

[7] Pursuant to 18 Pa. C.S.A. § 2501(a), "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being."  Section 2502 of the Pennsylvania Crimes Code categorizes murder into degrees.  *See* 18 Pa. C.S.A. § 2502(a)-(c).  Third-degree murder is any murder that is not murder in the first or second degree, that is, not an intentional killing (first-degree) or one committed in the commission of a felony (second-degree).  *See* 18 Pa. C.S.A. § 2502(c).  The *mens rea* required for a conviction of third-degree murder is malice.  *Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017).  "Murder in the third degree is an unlawful killing with malice but without the specific intent to kill."  *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super. 2011).

Malice in its legal sense is a:

> wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.  Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

*Dunphy*, 20 A.3d at 1219 (citation omitted) (cleaned up).  Pennsylvania courts "have consistently held that malice is present under circumstances where a defendant did not have an intent to kill,

*Commonwealth v. Ludwig*, 874 A.2d 623 (Pa. 2005), the Supreme Court of Pennsylvania upheld a similar challenge to the constitutionality of the now-repealed 18 Pa. C.S.A. § 2506(a), which classified drug delivery resulting in death as third-degree murder.[8]   In *Ludwig*, the defendant argued that the statute was unconstitutionally vague because it did not "set forth the mental state required for criminal liability."  *Id*. at 626.  The court found that while that version of Section 2506(a) did not contain an explicit *mens rea* "the General Assembly has provided a default culpability provision in Section 302(c) of the Crimes Code that is to be applied to determine the appropriate element of culpability."  *Id*. at 630.  The court concluded that, by designating the crime as one of murder in the third degree, culpability was otherwise provided because it had long held that the *mens rea* for murder in the third degree was malice for which "[t]he law is clear and well-settled."  *Id*. at 630-31.  Therefore, it stands to reason that any similar challenge Petitioner's counsel would have made based on Pennsylvania's third-degree murder statute failing to contain or define malice as the requisite *mens reas* would have been unsuccessful, and, therefore, he was not ineffective for failing to make such a challenge.  *See Wertz v. Vaugh*, 228 F.3d 178, 203 (3d Cir. 2000) (reasoning that "counsel cannot be deemed ineffective for failing to raise a meritless claim").

---

but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm."  *Packer*, 168 A.3d at 168 (citations omitted).

[8] In 2011, the Legislature removed the phrase "[a] person commits murder of the third degree who . . . [,]" 18 Pa. C.S.A. § 2506(a) (repealed Sept. 6, 2011), and substituted "[a] person commits a felony of the first degree if the person intentionally . . ." 18 Pa. C.S.A. § 2506(a) (effective Sept. 6, 2011).  This statute was amended to remove the *mens rea* of malice "with the intention of making it easier to convict and impose greater penalties on individuals who sold drugs when those drugs resulted in the death of another."  *Commonwealth v. Kemp*, 2015 WL 7187177 (Pa. Super. Nov. 16, 2015).

Petitioner's second claim of ineffective assistance of counsel is similarly without merit.  In his second claim, Petitioner argues that counsel was ineffective for failing to file a motion to recuse Judge Hathaway on the basis that she was personally bias against those charged with crimes involving child abuse.  In support of his claim, Petitioner provided an article about Judge Hathaway presumably published when she was seeking retention in the November 2007 general election.  ECF No. 10 at 2-4.  The article states that Judge Hathaway was an elementary school teacher prior to her legal career and that her experiences as a teacher and a mother fostered an awareness of issues facing children and sparked her interest in becoming an advocate for children and other victims of crime.  Her desire to better serve the needs of abused children prompted her to enroll in law school, and upon graduation she worked as an Assistant District Attorney where she was the Supervisor of the Child Abuse and Sexual Crimes Unit.  Petitioner claims that Judge Hathaway's bias against child abusers was evident when, after imposing the maximum sentence allowed at his sentencing hearing, she stated, "If I could impose a lengthier sentence I would do so."  ECF No. 24-9 at 61.

Pennsylvania law requires that the party requesting recusal "produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Stevenson*, 829 A.2d 701, 704-05 (Pa. Super. 2003).  Nothing in the record, including the article cited by Petitioner and her statement that she would have imposed a lengthier sentence, supports Petitioner's claim that Judge Hathaway was biased and unable to impartially preside over his case.  Petitioner was informed of the maximum sentence that could be imposed when he plead guilty to third-degree murder, and he was fully apprised that he risked receiving the maximum sentence by pleading guilty.  Judge Hathaway was required to "make as

16

part of the record and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa. C.S.A. § 9721(b).  Although she stated that she would have imposed a lengthier sentence if she was able to do so, this statement was made in conjunction with her reasons for imposing the maximum sentence.[9]  These reasons were considered on appeal when Petitioner challenged his sentence as excessive, and the Superior Court found that Judge Hathaway had considered everything the court was required to consider when it imposed sentence, including the fact that Petitioner had no prior record, accepted responsibility for his actions, expressed remorse for killing his daughter and had numerous character witnesses testify and submit letters and a petition on his behalf.  ECF No. 24-12 at 54-57.  Because there is nothing in the record that gives the appearance of impropriety that would warrant Judge Hathaway's recusal, there was no basis for Petitioner's counsel to file a motion to recuse her.  Therefore, he was not ineffective for failing to file said motion.  *See Wertz*, 228 F.3d at 203.

In sum, the Court finds that the default of claims one and two cannot be excused under *Martinez* because neither claim is "substantial."  Furthermore, even if Petitioner could demonstrate that the claims were substantial under the standards set forth in *Martinez* and *Miller-El*, the Court finds that their default would still not be excused because to do so Petitioner would have to demonstrate that his PCRA counsel was ineffective under *Strickland* for failing to raise the claims in a PCRA petition and Petitioner cannot make this showing since neither claim has merit.

      b.  **Claim 3**

---

[9] In her opinion dated January 17, 2018, and in addressing Petitioner's claim that his sentence was manifestly excessive, Judge Hathaway further explained her reason for imposing the maximum sentence by stating that "[a]lthough Defendant had no significant prior criminal record, the facts and details of this case were so horrific and appalling that the sentence imposed was appropriate and also legally permissible."  ECF No. 24-16 at 14-15.

In claim three, Petitioner argues that trial counsel was ineffective for failing to examine favorable evidence, investigate defenses and consult with his client about both.  His claim is premised on the belief that the victim's death could have been attributed to other causes and in support he cites to the victim's medical records and autopsy report, as well as a report prepared by Dr. James Smith.  ECF No. 10-2, 10-3, 10-4.  He states that the victim's medical records would have contradicted the Commonwealth's expert that the victim was a healthy baby without any major medical problem because hospital records indicate that the victim's mother was using Suboxone during her pregnancy and that the victim had to be admitted into the NICU upon her birth.  With respect to the victim's autopsy report, Petitioner relies on the fact that the forensic pathologist, Dr. Cyril Wecht, could not provide the manner of death for the victim,[10] and he claims that Dr. Smith concluded within a reasonable degree of current medical and scientific thinking that the victim's death "[could not] be attributed to an act of violent shaking."  Collectively, he claims this evidence would have supported a defense at trial and instilled in the jury a reasonable doubt as to his guilt.  Consequently, he claims that he would have not pled guilty had his counsel investigated and advised him appropriately.

Petitioner raised a similar claim before the PCRA court arguing that his counsel was ineffective for advising him to plead guilty to third-degree murder without investigating or informing him of possible defenses.  With respect to this claim, the Superior Court concluded that the record did not support Petitioner's claim that his attorney did not inform him of possible

[10] This is a misstatement of the autopsy report.  Dr. Wecht stated that the "manner of death will be determined by the Westmoreland County District Attorney's Office."  However, he opined that the victim's death was "due to severe cerebral edema associated with anoxic encephalopathy" that was "caused by traumatic injuries to the brain that produced bilateral subdural, subarachnoid, and retro-bulbar hemorrhages."  ECF No. 10-3 at 15.

18

defenses, and it specifically noted Petitioner's averments made at his plea hearing indicating that he discussed all possible defenses with counsel. It also noted that the record indicated counsel was aware of the report by Dr. Smith because it was in the form of a letter addressed to Petitioner's attorney dated well before Petitioner entered his guilty plea. *See* ECF No. 24-25 at 31-32.

Petitioner has not met his burden imposed on him by AEDPA's standard of review at § 2254(d)(1), which is the applicable provision that applies to this Court's review of this claim. The state court applied the correct analysis when it evaluated this claim, thus Petitioner cannot establish that the state court's adjudication was "contrary to" *Strickland*. *See Wertz*, 228 F.3d at 202-04 ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted *Strickland* and thus was not 'contrary to' established Supreme Court precedent.") The state court's adjudication was also not an "unreasonable application of" *Strickland*. Under the "unreasonable application" provision of § 2254(d)(1), the appropriate inquiry is whether the state courts' application of *Strickland* to a petitioner's ineffectiveness claim was objectively unreasonable, *i.e.*, the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland*. To satisfy his burden under § 2254(d)(1), a petitioner must do more than convince this Court that the Superior Court's decision denying a claim was incorrect. *Dennis v. Secy., Pennsylvania Dept. of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016). He must show that it "was objectively unreasonable." *Id*. (internal quotation omitted). This requires that he establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562

U.S. at 103.   In addressing *Strickland*'s ineffective assistance standard and its relationship to

AEDPA, the Supreme Court explained,

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689; *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at 123.   The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  556 U.S., at 123.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105.  *See also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) ("A state

court must be granted a deference and latitude that are not in operation when the case involves

[direct] review under the *Strickland* standard itself.  Federal habeas review of ineffective assistance

of counsel claims is thus doubly deferential.") (internal citations and quotations omitted).

Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated

under the § 2254(d)(1) standard, there is no basis for this Court to conclude that the state court's

adjudication of Petitioner's ineffective assistance of counsel claim was an "unreasonable

application of" *Strickland*.  The record does not support Petitioner's claim that his attorney did not

examine the evidence and investigate possible defenses prior to advising Petitioner to plead guilty.

Petitioner relies heavily on the report prepared by Dr. Smith.  However, that report is directed to

and was written pursuant to a request from Petitioner's attorney, and it indicates that Dr. Smith

reviewed not only the criminal complaint and police reports in the matter, but also the victim's

complete medical record and autopsy report.  *See* ECF No. 10-4 at 2.  Given this, it is logical to

assume that Petitioner's attorney examined both the victim's medical records and autopsy report

prior to providing them to Dr. Smith, which belies Petitioner's claim that he failed to conduct a

proper investigation.  Furthermore, as noted by the state court, Petitioner's averments made during the plea hearing also rebut his claim that his attorney failed to investigate and advise him of possible defenses.  Petitioner has thus failed to satisfy his burden under the AEDPA, and therefore this claim is denied.[11]

### 2. <u>Validity of Guilty Plea</u>

Petitioner's final claim is that his guilty plea was not knowing, intelligent or voluntary because there was no explanation of the elements of third-degree murder, either in the written or oral colloquy; the Commonwealth failed to adduce a sufficient factual basis for the plea; and it could not be ascertained whether he understood the nature of the charge against him.  He also claims that his counsel was ineffective for failing to object to the constitutionally deficient plea[12] based on the aforementioned reasons.

In *Hill v. Lockhart*, 474 U.S. 52 (1984), the United States Supreme Court explained that "[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id*. at 56 (internal quotations and citations omitted).  Where, as is the case here, the petitioner entered his plea upon the advice of counsel, the voluntariness of his plea depends on whether the advice counsel gave "was within the range of competence demanded of attorneys in criminal cases[,]" *id*. (internal quotations and citations omitted), and the petitioner must satisfy the standard

---

[11] The Court notes that the standard of review set forth at 28 U.S.C. § 2254(d)(2) is not applicable to this claim because the state court's decision was not premised upon a finding of fact.  *See Burt v. Titlow*, 571 U.S. 12, 18 (2013) (Section 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]")

[12] An excerpt of Petitioner's plea in relevant part is provided *infra*.

set forth in *Strickland* in order to prevail on his challenge to his guilty plea. *Hill*, 474 U.S. at 57-59.

The law with regard to a valid plea in Pennsylvania is as follows:

> "A valid plea colloquy must delve into six areas: 1) the nature of the charges, 2) the factual basis of the plea, 3) the right to a jury trial, 4) the presumption of innocence, 5) the sentencing ranges, and 6) the plea court's power to deviate from any recommended sentence." *Commonwealth v. Morrison*, 878 A.2d 102, 107 (Pa. Super. 2005); Pa.R.Crim.P. 590, Comment. Additionally, a written plea colloquy that is read, completed and signed by the defendant and made a part of the record may serve as the defendant's plea colloquy when supplemented by an oral, on-the-record examination. *Morrison*, 878 A.2d at 108 (citing Comment to Pa.R.Crim.P. 590). "[A] plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea." *Commonwealth v. Fluharty*, 429 Pa. Super. 213 (1993). "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003) (internal citation omitted). The entry of a negotiated plea is a "strong indicator" of the voluntariness of the plea. *Commonwealth v. Myers*, 434 Pa. Super. 221 (1994). Moreover, "[t]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be knowingly, voluntarily and intelligently made." *Commonwealth v. Anderson*, 995 A.2d 1184, 1192 (Pa. Super. 2010).

*Commonwealth v. Reid*, 117 A.3d 777, 782-83 (Pa. Super. 2015).

In his collateral proceedings, Petitioner challenged the validity of his plea, along with counsel's failure to lodge objections thereto, and the PCRA court concluded that Petitioner's guilty plea was constitutionally sufficient under the law and thus there was no basis to find his counsel ineffective for failing to object to it. After citing to parts of Petitioner's oral plea colloquy, the PCRA court stated as follows:

> . . . the record establishes that the colloquy met all prescribed requirements as per Pa.R.Crim.P. 590. The Court explained the different levels of criminal homicide; Defendant plainly stated that he understood the charges against him, what he was pleading to, his trial and appellate rights, and the possible sentences.

When asked, he stated that he had no mental health issues that the Court should have been aware of, that he was satisfied with the performance of counsel, and that he was pleading guilty because he was indeed guilty. Defendant also completed a written guilty plea petition. Within that petition, Defendant again stated that he was guilty, that he understood that the Court could sentence him to the statutory maximum period of 20-40 years, and that he suffered from no physical or mental disabilities. As the colloquy conducted unambiguously met all legal requirements, counsel was not ineffective for failing to object to the colloquy. Therefore, Defendant's claims alleging that the colloquy was legally deficient are meritless.

ECF No. 24-16 at 10-11.

The Superior Court reaffirmed this finding on appeal, and the relevant portion of its opinion provides as follows:

A review of the testimony from Milisits' plea hearing reveals that he repeatedly affirmed that he understood the charge to which he was pleading guilty, was aware of the maximum possible sentence that could be imposed, and had discussed all available defenses with counsel. The factual basis for the plea was incorporated from the Criminal Information, and Milisits further confirmed that he knew he was pleading guilty to "intentionally, knowingly, recklessly or negligently" causing S.L.'s death. Milisits further attested in his written plea colloquy that his attorney had counseled him regarding "all possible defenses that [he] might have," the elements of the offenses, the maximum possible sentence of incarceration, and all applicable sentencing guideline ranges. The form does not list a negotiated sentence, instead only listing the maximum possible sentence that could be imposed. Milisits wrote on the form that he was pleading guilty "because I am guilty." Milisits is bound by these statements that he made under oath in support of his guilty plea. The record does not support Milistis' claim that plea counsel did not inform him of possible defenses, that he was promised a lesser sentence, and that his colloquy was defective. Accordingly, this claim is meritless.

ECF No. 24-25 at 46 (internal citations to record and footnote omitted).

As previously stated in relation to claim three, this Court's review is very limited because the state court denied this claim on the merits. The "clearly established" law is that which is set forth in *Strickland* and its progeny, such as *Hill*, and the state court applied a standard that does not contradict that law. Accordingly, the state court's adjudication of this claim withstands review under § 2254(d)(1)'s "contrary to" clause. The state court's adjudication also withstands review

under § 2254(d)(1)'s "unreasonable application" clause because, as made clear in the state court's reasoning for denying relief, the record clearly establishes that there was no merit to his claims that his plea was invalid and therefore counsel had no basis on which to object. Contrary to Petitioner's objections, he was explained and exhibited an understanding of the nature of the charge against him for which an adequate factual basis was established and he was also informed of what the Commonwealth would have to prove if he elected to proceed to trial. [13]

> Q:     You are pleading guilty to the amended count of murder of the third degree. If you went to trial the Commonwealth would have to prove that on November 15, 2012, that you intentionally, knowingly, recklessly or negligently caused the death of [the victim]? - - whose date of birth was [redacted], and in return for that plea the Commonwealth is willing to dismiss Counts 2, 3, 4, and 5.
>
> Do you understand what you're pleading guilty to, what the Commonwealth would have to prove if you went to trial and what the maximum penalties could be if you were convicted?
>
> A:     Yes, Your Honor.

* * *

> Q:     Mr. Milisits, I just want to clarify for you. I just read to you on a general charge of criminal homicide what the elements are. If you went to trial on this matter I would be reading to the jury the elements of all the different types of homicide, but I'm sure that your attorney has explained that to you that if you were convicted either of first degree homicide or second degree that it would be a mandatory life in prison without the possibility of parole, you understand that?
>
> A:     Yes, I do, Your Honor.
>
> Q:     There would have been a different charge. There is murder in the first degree, murder of the second degree and then murder of the third degree would be

---

[13] Petitioner's complaint appears to be that he was not informed of the elements of third-degree murder. However, Petitioner was not charged with third-degree murder. He was charged with criminal homicide, the elements of which the Commonwealth would have had to prove had Petitioner elected to go to trial. The Commonwealth amended count one of the Criminal Information, criminal homicide, to third-degree murder in exchange for Petitioner's guilty plea.

other kinds of murder and I would be reading a long instruction on that.  Do you wish me to read that instruction to you?

A:      No, Your Honor, I understand.

Q:      You feel like you fully understand what you're pleading guilty to?

A:      That is correct.

Q:      And you understand the maximum penalty that I can impose would be 40 years in prison?

A:      Yes, I do.

ECF No. 24-8 at 18-19.

Petitioner has also not met his burden under § 2254 (d)(2) by demonstrating that the state court's adjudication of this claim was an unreasonable determination of the facts in light of the state court record, which included both the written and oral plea colloquies.

Finally, the Court notes that even though the record does not support Petitioner's claims, Petitioner's reliance on *Commonwealth v. Ingram*, 316 A.2d 77 (Pa. 1974) and *Commonwealth v. Flanagan*, 854 A.2d 489 (Pa. 2004), is misplaced.  *Ingram*'s holding that a defective plea colloquy alone is grounds for withdrawal of a guilty plea is no longer an accurate statement of the law. *Commonwealth v. Schaffer*, 446 A.2d 591 (Pa. 1982), abrogated this "*per se* approach" and reaffirmed that the proper test to determine whether a plea was voluntary, knowing, and intelligent is to look to the totality of the circumstances surrounding the plea.  Additionally, while the Supreme Court of Pennsylvania held in *Flanagan* that the defendant's guilty pleas were not knowingly, voluntarily, and intelligently given because of the absence from the plea colloquy of any discussion of the factual basis supporting the pleas, that case is factually distinct in that the combination of misstatements of law made by the trial court, and the failure to put the underlying

facts on the record, in a case involving co-defendants with widely differing accounts of the incident in question, induced an involuntary guilty plea to murder generally.  In *Flanagan*, the Supreme Court of Pennsylvania acknowledged that although "there is a strong preference for a dialogue in colloquies with meaningful participation by the defendant throughout, there is no set manner, and no fixed terms, by which factual basis must be adduced."  854 A.2d at 500.

For the reasons stated, Petitioner has not met his burden under the AEDPA, and therefore this claim is also denied.

### D.  Certificate of Appealability

AEDPA codified standards governing issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals form . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by the State court[.]"  28 U.S.C. § 2253(c)(1)(A).  It also provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id*. § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a district court has rejected a constitutional claim on its merits, "[t]he petitioner

must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id*.

Applying this standard here, Petitioner has not made the requisite showing.  Accordingly, the Court will not issue a certificate of appealability on any of Petitioner's claims.  An appropriate Order will be entered.

Dated: March 27, 2024.


<u>s/Kezia O. L. Taylor</u>
KEZIA O. L. TAYLOR
United States Magistrate Judge


Cc:     Matthew Christian Milisits
        LW-9325
        SCI Benner Township
        301 Institution Drive
        Bellefonte, PA  16823

        Counsel for Respondents
        (*via CM/ECF electronic mail*)